UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

```
THOMAS DEWEESE, AMY DEWEESE,    )
K.D., N.D., and Z.D.,           )
                                )
          Plaintiffs,           )
                                )
     v.                         )    Case No. 04-1404
                                )
TAZEWELL COUNTY, ILLINOIS,      )
LORRY ANDERSON, MEREDITH        )
FARLEY, MICHELLE DEVOS,         )
LYNDA SHARP LOWER, PATRICK      )
FLANNIGAN, RICHARD STEWART,     )
JENNIFER SEWARD, CHRISTINA      )
SHOWALTER, AND METHODIST        )
MEDICAL CENTER OF ILLINOIS,     )
                                )
          Defendants.           )
```

**O R D E R**

Before the Court are Plaintiffs' Amended Complaint [Doc. # 98]; Plaintiffs' Motion for Preliminary Injunction [Doc. # 103]; Motion of Defendants Farley, Devos and Sharp-Lower to Dismiss Amended Complaint [Doc. # 106]; Defendant Tazewell County's Motion to Dismiss and Motion to Strike [Doc. # 109]; Motion to Dismiss by Defendants' Flannigan, Stewart, Seward, and Showalter [Doc. # 113]; Defendant Lorry Anderson's Motion for More Definite Statement Pursuant to Rule 12(e) [Doc. # 120]; Defendant Methodist Medical Center of Illinois' Motion to Dismiss [Doc. # 129]; Plaintiffs' Petition for Preliminary Injunction [Doc. # 133]; Plaintiffs N.D. and Z.D.'s Motion to Withdraw Motion for Preliminary Injunction [Doc. # 148]; and Plaintiffs N.D. and Z.D.'s Motion to Withdraw Petition for Preliminary Injunction [Doc. # 149].

I.  **BACKGROUND**

The following allegations are taken from the Amended Complaint. On or about March 6, 2003, Plaintiffs Thomas and Amy Deweese were referred to "Families First" where Defendant Lorry Anderson was assigned as their caseworker. On March 25, 2003, Tazewell County State's Attorney Stewart Umhotz caused to be filed a "Shelter Care Petition" regarding Plaintiffs K.D and Z.D. in Tazewell County Court. This petition, written by Defendant DCFS Social Worker Richard Stewart, alleged that Plaintiffs K.D. and Z.D. had been abused or neglected, and that K.D and Z.D. were residing in Tazewell County. In fact, Amy Deweese, K.D., and Z.D. were residing in Peoria County at the time. The petition was "rife with allegations, innuendo, and allusions but nothing in it showed any abuse nor neglect of [K.D. or Z.D.]." On or about March 28, 2003, Anderson issued an unspecified type of report and informed Amy Deweese that her children were in "protective custody," and Plaintiffs' case was referred to Defendant Catholic Charities, Inc., where Defendant Meredith Farley was assigned as the caseworker. Plaintiffs allege that Defendant DCFS Social Workers Stewart and Showalter had an "overly keen and extreme interest in the fact that Amy Deweese was newly pregnant," and that the reason Families First and Catholic Charities, Inc., were involved with Plaintiffs was to take Amy Deweese's unborn child.

On April 1, 2003, the Shelter Care Petition was heard and K.D. and Z.D. were ordered to reside apart from their parents. Thereafter, Farley delayed services to Plaintiffs and did not file a "service plan" until July 24, 2003. The delay was partly to "wait until [N.D.] was born." On September 21, 2003, Plaintiff

N.D. was born at Methodist Medical Center. During the hospital stay, N.D. was subjected to a "criminal drug screening," and Farley and Defendant DCFS Social Worker Patrick Flannigan conspired to remove N.D. from his parents. N.D. was removed from his parents custody and was placed with foster parents by Catholic Charities, Inc., with the implication that N.D. was up for adoption. In May 2004, Defendant Michelle Devos became Plaintiffs' caseworker.

During the pendency of the shelter care case, Catholic Charities "did anything and everything to avoid providing the Deweese parents 'services'." Specifically, the Amended Complaint alleges that, the "Catholic Charities Defendants" conspired to delay the resolution of the shelter care case by (1)creating new and unnecessary services; (2) not allowing the family to have family counseling; (3) defaming and slandering Amy Deweese by, *inter alia*, declaring Amy "crazy" and stating that she needed a psychiatric evaluation; and (4) abusing the children's visitation time by discussing the shelter care case, telling the children what they could or could not discuss with their parents, never increasing the time to promote family unity, and withholding visitation until Tom Deweese showed the caseworker his FOID card. Plaintiffs also allege that Catholic Charities, Inc., forced K.D. and Amy Deweese to participate in an "explicit sex program."

Plaintiffs claim their constitutional rights were violated when Defendants (1) unjustifiably used "illegal and unconstitutional means" to remove the minor Plaintiffs from their parents (Count I); (2) conspired to "illegally detain" and "artificially" keep the minor Plaintiffs out of their parents custody (Count II); (3) conspired to "string their contracts

through various means" to procure Federal Government funding (Count III); (4) conspired to show a minor child explicit sexual material against her parents wishes (Count IV); (5) conspired to "illegally detain" or take N.D. from his parents and give him to foster parents (Count V); (6) deliberately violated federal law by "searching" N.D. by conducting a urine screen for drugs (Count VI); (7) abused Plaintiffs' civil rights and abused process by prosecuting the shelter care petition with an ulterior purpose (Count VII); (8) delayed services and created new services in the shelter care case (Count VIII); (9) conspired to infringe and violate Thomas Deweese "right to keep and have firearms" (Count IX); and (10) failed to meet deadlines prescribed by state law in the shelter care case, and repeatedly slandered, libeled, and defamed Plaintiffs in the shelter care case (Count X).  Plaintiffs further claim that (1) Defendants' employers are liable on a respondeat superior basis (Count XI); (2) that the individual Defendants have no immunity under state law (Count XII); and (3) that Defendants' employers have a duty to indemnify the individual Defendants that were acting within the scope of their employment. Plaintiffs claim all of these violations where undertaken pursuant to Defendant Tazewell County's "policy and practice," by Tazewell County State's Attorney's Office employees and the various social worker Defendants.  Plaintiffs have also filed two separate motions for preliminary injunctions.  In the first, they seek an order forbidding contact between Plaintiffs and Defendants.  In the second, they seek an order prohibiting Defendant Methodist Medical Center from conducting any further drug tests or searches on

infants and children without the express consent of the parents.

## II.  LEGAL STANDARD

When considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must view the Complaint in the light most favorable to the Plaintiff and the Complaint's well-pleaded factual allegations must be accepted as true. Williams v. Ramos, 71 F.3d 1246, 1250 (7th Cir. 1995). Therefore, a complaint can only be dismissed if a plaintiff cannot prove any set of facts upon which relief can be granted. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429-30 (7th Cir. 1996). However, the Court is not bound by a plaintiff's legal conclusions. Baxter by Baxter v. Vigo County School Corp., 26 F.3d 728, 730 (7th Cir. 1994).

## III. ANALYSIS

Defendants[1] have moved to dismiss the Amended Complaint.  On September 14, 2005, the Court appointed a Guardiam Ad Litem ("GAL") to represent the interests of the minor Plaintiffs N.D., and Z.D. Due to a scrivener's error K.D. was not appointed counsel until March 22, 2006 and therefore no response has been filed on her behalf. Because the claims and rights of the parents differ from those of the children, the Court will address the parents' claims

---

[1] The Court notes that Defendant Lorry Anderson does not have a current motion to dismiss pending, however, Plaintiffs' claims against her suffer from the same defect as their claims against the other Defendants. Accordingly, the Court will, *sua sponte*, act as if the current motions on file apply to Plaintiffs' claims against Lorry Anderson as well. See Hoskins v. Poelstra, 320 F.3d 761, 763 (7th Cir. 2003) (district judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense, even when plaintiff has paid all fees for filing and service).

5

first, and then the childrens' claims.

**A.   The Parents' Claims**

All of the motions to dismiss are based on, *inter alia*, the Rooker-Feldman doctrine and Younger abstention doctrine. For the reasons that follow, the Court finds the parents claims in the Amended Complaint should be dismissed.

**(1)   Rooker-Feldman Doctrine**

The Rooker-Feldman doctrine interprets 28 U.S.C. § 1257 as ordinarily barring lower federal courts from engaging in appellate review of state court determinations. Ritter v. Ross, 992 F.2d 750, 753 (7th Cir. 1993). General challenges to the constitutionality of a state rule or statute "do not necessarily require a United States district court to review a final state-court judgment in a judicial proceeding." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486, 103 S.Ct. 1303, 1318 (1983). However, "engaging in impermissible appellate review may occur when a district court is asked to entertain a claim that was not even argued in the state court but is 'inextricably intertwined' with the state court judgment." Ritter, 992 F.2d at 753 (quoting Feldman, 460 U.S. at 483 n. 16). When considering a plaintiff's claims in light of the Rooker-Feldman doctrine, a court must ask two questions: 1) Were the proceedings before the state court a judicial proceeding; 2) If so, are the plaintiff's claims inextricably intertwined with those proceedings so as to make consideration of the plaintiff's claims an impermissible review of state proceedings? Leaf v. Supreme Court of the State of Wisconsin, 979 F.2d 589, 597 (7th Cir. 1992). A claim is

6

inextricably intertwined with a state court proceeding if the relief sought by a plaintiff would in effect require invalidating the state court judgment. <u>Landers Seed Co., Inc. v. Champaign Ntl. Bank</u>, 15 F.3d 729, 733 (7th Cir. 1994) (citing <u>Facio v. Jones</u>, 929 F.2d 541, 543 (10th Cir. 1991)).  The effect of this doctrine is to make it clear that "no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." <u>Remer v. Burlington Area School Dist.</u>, 205 F.3d 990, 996 (7th Cir. 2000).

### (2) Younger Abstention Doctrine

In <u>Younger v. Harris</u>, 401 U.S. 37 (1971), the Supreme Court held that absent extraordinary circumstances, a federal court should not enjoin a pending state criminal proceeding. <u>Id.</u> at 53-54.  This principle has been extended to civil proceedings when important state interests are involved. <u>Ohio Civil Rights Commission v. Dayton Christian School, Inc.</u>, 477 U.S. 619, 628 (1986).  Similar to criminal proceedings, in child welfare proceedings, the state has an independent interest in the welfare of the children and "in a practical sense, the State is a party to the proceedings in a fashion analogous to its role in a standard criminal proceeding." <u>Brunken v. Lance</u>, 807 F.2d 1325, 1330 (7th Cir. 1986).

### (3) Counts I-III, V, VII-VIII, and X

Amy and Thomas Deweese's claims that Defendants unjustifiably used "illegal and unconstitutional means" to remove the minor Plaintiffs from their parents, conspired to "illegally detain" and

7

"artificially" keep the minor Plaintiffs out of their parents custody, conspired to "string their contracts through various means" to procure Federal Government funding, conspired to "illegally detain" or take N.D. from his parents and give him to foster parents, abused Plaintiffs' civil rights and abused process by prosecuting the shelter care petition with an ulterior purpose, delayed services and created new services in the shelter care case, and failed to meet deadlines prescribed by state law in the shelter care case, all relate to the handling of the shelter care petition in state court.  The Court finds, to the extent these claims--as they relate to the parents--have been finally adjudicated in state court, they are barred by the Rooker-Feldman doctrine as they are inextricably intertwined with the shelter care petition case; and to the extent the shelter care petition is still pending, the Younger abstention doctrine forbids this Court's intervention.

Illinois law allows parents involved in child welfare proceedings such as Amy and Thomas Deweese "to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files . . . and to be represented by counsel."  705 ILCS 405/1-5.  Moreover, a review of the Act as a whole indicates that Amy and Thomas Deweese should have been afforded the opportunity to be heard and to controvert evidence throughout the court proceedings in which their rights and the rights of their children were adjudicated.  Accordingly, if they were denied those rights the proper recourse for them is to file an appeal with the Illinois Appellate Court.

In conclusion, to the extent the state court's decisions in

the shelter care petition case constitutes a final judgment, the Rooker-Feldman prevents this Court from having jurisdiction to hear Amy and Thomas Deweese's claims based upon it.[2] To the extent the state court judgment is not yet final, the Court finds that the appropriate action is to refrain from deciding these claims, as Younger abstention presupposes that the state court is an adequate forum to address Amy and Thomas's allegations. Thus, Amy and Thomas Deweese's claims in Counts I-III, V, VII-VIII, and X, against all Defendants will be dismissed.

### (4) Count IV

In Count IV of the Amended Complaint, Plaintiffs allege that Defendants conspired to show a minor child explicit sexual material against her parents wishes. While this claim might be actionable under state law, it is not a constitutional violation. Considering all of Amy and Thomas's federal claims are being dismissed with this Order, the Court declines to exercise supplemental jurisdiction over this claim. See 28 U.S.C. § 1367(c)(3).

### (5) Count VI

In Count VI of the Amended Complaint, Plaintiffs allege that Defendants violated "federal law" by conducting a urine screen for drugs on N.D. To the extent this count is attempting to allege a Fourth Amendment violation, the claim belongs to N.D., not his

---

[2] The Court notes that Amy and Thomas Deweese have also alleged some conduct that could be construed as supporting claims under state law, (*i.e.* Count X's allegations that Defendants repeatedly slandered, libeled, and defamed them in the shelter care case). To the extent these claims are based purely on state law, the Court declines to exercise supplemental jurisdiction considering all of Amy and Thomas's federal claims are being dismissed with this Order. See 28 U.S.C. § 1367(c)(3).

parents. Consequently, Amy and Thomas Deweese have no legal interest in this claim.

### (6) Count IX

In Count IX of the Amended Complaint, Plaintiffs allege that Defendants conspired to infringe upon Thomas Deweese's Second Amendment right to "keep and have firearms." In support of this claim, Plaintiffs allege that Defendants improperly withheld visitation until Thomas Deweese showed the caseworker his FOID card. However, the Second Amendment does not apply to state actors, and Plaintiffs have not alleged any federal government involvement in this alleged violation. See Presser v. Illinois, 116 U.S. 252, 265 (1886); Justice v. Elrod, 832 F.2d 1048, 1051 (7th Cir. 1987) (while the Second Amendment guarantees the right to bear arms, it has been held not to be enforceable against state action); Quilici v. Village of Morton Grove, 695 F.2d 261, 269-70 (7th Cir. 1982). Accordingly, this claim is dismissed.

### B. The Children's Claims

In their responses to Defendants' motions to dismiss, N.D. and Z.D. acknowledge that some of the claims, as they are now pled, do not state a claim for relief. However, they argue that some of their claims survive Defendants' motions to dismiss. N.D. and Z.D. have also moved to withdraw the two pending motions for preliminary injunctions. Because it is difficult to evaluate the viability of the minors claims based on the current pleading (which does not differentiate the various Plaintiffs), the GAL is hereby ordered to file an Amended Complaint on or before May 5, 2006. The pending Motions to Dismiss as they pertain to the minor children's claims

will be denied as moot with leave to refile after the amended complaint is filed.

### C. Motions for Preliminary Injunction

With respect to Amy and Thomas Deweese, the pending motions for preliminary injunction are denied as moot considering all their claims have been dismissed. The motion has been withdrawn with respect to N.D. and Z.D. With respect to K.D., the motions are denied for failure to demonstrate irreparable harm will result if the motions are not granted. See City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (injunctive relief is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again).

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Amy and Thomas Deweese's claims against all Defendants are dismissed.

IT IS FURTHER ORDERED that Motion of Defendants Farley, Devos and Sharp-Lower to Dismiss Amended Complaint [Doc. # 106]; Defendant Tazewell County's Motion to Dismiss and Motion to Strike [Doc. # 109]; Motion to Dismiss by Defendants' Flannigan, Stewart, Seward, and Showalter [Doc. # 113]; and Defendant Methodist Medical Center of Illinois' Motion to Dismiss [Doc. # 129] are GRANTED IN PART and DENIED IN PART. The motions are granted with respect to the claims of Amy and Thomas Deweese. The motions are DENIED AS MOOT with respect to the minor Plaintiffs, however, Defendants may renew their motion after the GAL files an amended complaint.

IT IS FURTHER ORDERED that Defendant Lorry Anderson's Motion

for More Definite Statement Pursuant to Rule 12(e) [Doc. # 120] is DENIED as MOOT.  Amy and Thomas Deweese's claims against Anderson have been dismissed, and the GAL has been directed to file an amended complaint.

　　　　IT IS FURTHER ORDERED that Plaintiffs N.D. and Z.D.'s Motion to Withdraw Motion for Preliminary Injunction [Doc. # 148] and Motion to Withdraw Petition for Preliminary Injunction [Doc. # 149] are GRANTED.

　　　　IT IS FURTHER ORDERED that Plaintiffs' Motions for Preliminary Injunction [Doc. ## 103, 133] are DENIED as MOOT with respect to Plaintiffs' Amy and Thomas Deweese, and DENIED on the merits with respect to K. D.

　　　　Entered this 23rd  day of March, 2006.


　　　　　　　　　　　　　　　　　　　　　　s/ Joe B. McDade
　　　　　　　　　　　　　　　　　　　　　　 JOE BILLY McDADE
　　　　　　　　　　　　　　　　　　　　United States District Judge